UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IDRISS ROBINSON, #330120,

    Petitioner,

                                                      Case No. 2:13-Cv-14407

v.

                                                      Honorable Patrick J. Duggan

KENNETH MCKEE,

    Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

This is a *pro se* habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Petitioner Idriss Robinson ("Petitioner"), a Michigan Department of Corrections prisoner currently confined at the Bellamy Creek Correctional Facility in Ionia, Michigan, contends that his incarceration violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  After a jury trial, Petitioner was convicted of two counts of arson of a dwelling house, Michigan Compiled Laws § 750.72, arson of personal property worth more than $200 but less than $1,000, Michigan Compiled Laws § 750.74(1)(b)(i), and assault and battery, Michigan Compiled Laws § 750.81.  He was sentenced as a fourth habitual offender, Michigan Compiled Laws § 769.12, to

concurrent terms of 15 to 60 years imprisonment on the arson of a dwelling house convictions, 252 days in jail on the arson of personal property conviction, and 93 days in jail on the assault and battery conviction. Petitioner's sole claim on habeas review is that the prosecution failed to present sufficient evidence to support the arson convictions.

Promptly after the filing of a habeas petition, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rules Governing § 2254 Cases, Rule 4, 28 U.S.C. foll. § 2254; *see also* 28 U.S.C. § 2243. If, after preliminary consideration, the Court determines that the petitioner is not entitled to relief, the Court must summarily dismiss the petition. Rules Governing § 2254 Cases, Rule 4, 28 U.S.C. foll. § 2254; *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (noting that district courts possess a duty to "screen out" petitions that lack merit on their face). Federal district courts may dismiss a habeas petition pursuant to Rule 4 if it raises legally frivolous claims or if it contains factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking such a review in the instant matter, the Court concludes that the petition must be denied.

## I. BACKGROUND

Petitioner's arson convictions arose from a car fire that scorched two nearby homes in Royal Oak Township on November 3, 2009. Petitioner was tried along with his brother, Dorian Robinson. The Michigan Court of Appeals set forth the relevant facts, which are presumed correct on habeas review, *see* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> These consolidated appeals arise from an incident on November 3, 2009 when two men were observed starting a car fire which spread to two nearby homes. The fire was tied to an earlier incident on November 1, 2009 when defendant Idriss Robinson[FN1] (hereinafter "Idriss") brought his daughter to the home of Latyra Mathews, with whom he had a prior relationship, to have his daughter's hair braided. When Idriss arrived at Mathews' home, he was greeted by a friend of Mathews, Antoinette Roseborough, who called Idriss a "boy" and stated: "[t]his n* * * * is here." Mathews initially stated that while she was in another room, Roseborough and Idriss began arguing. When Mathews returned, Roseborough told her that Idriss had smacked her a couple of times, and Mathews observed that Roseborough had a swollen lip. Mathews told Idriss to leave, and Mathews and Roseborough called the police.
>
> [FN1.] During trial, Idriss Robinson was often referred to by his nickname of "Mike."
>
> Deputy Van Lacken arrived at Mathews' house and while Mathews spoke with Deputy Van Lacken, she received a phone call from Idriss' brother and codefendant, Dorian. Mathews testified that Dorian expressed concern over the incident between his brother and Roseborough, and wanted to know what happened. However, Mathews stated that Dorian did not threaten her or try to scare her. She testified that she told Deputy Van Lacken that she did not witness the alleged assault, but only learned of it through Roseborough, though she also admitted that she did not wish to testify, but stated that a police officer told her he would try to take her kids away if she refused. Mathews also testified that Roseborough's boyfriend, Lamont, asked Mathews and Roseborough for Idriss' address, but

both refused to give it to him. Mathews testified further that not giving the information to Lamont led to an argument between Lamont and Roseborough.

At about 7:00 p.m. on November 3, 2009, Officer Jennifer Miles responded to a dispatch call reporting a fire at Mathews' residence. When she arrived, she saw a car fully engulfed in flames in a driveway between two houses. The flames from the car reached the house on the right, and began melting the siding, it is made out of cinder blocks so the bottom part did not burn. However, the fire damaged the vinyl siding on the second story and a second-story window. The flames also reached the upper windows of the house on the left and melted part of a window, an overhang and part of the vinyl siding.

The fire inspector on the scene, Arthur Schrah, as a member of the Michigan Arson Prevention Committee, placed a flier near the scene of the arson offering a reward for information leading to the arrest and conviction of the arsonist. Schrah testified that he did not release any details regarding the fire or how it started, however the fire or sheriff's department did give some information to the media, and a story appeared stating that the fire started on top of a convertible. Schrah also explained that, in general, arsons only occur during the day if the arsonist is trying to send a message or intimidate someone. Additionally, Mathews' car was not insured, so there would not have been a financial motive for starting the fire. According to Schrah, although it was dark outside, the flames from the car illuminated the surrounding area. Additionally, there were lights on inside both of the houses, and a porch light on one of the houses was turned on, that helped to light up the area. According to Schrah's testimony, he met and spoke with Mathews, but she would not cooperate because she feared for her safety and thought that someone was watching her. When told to contact him the next day, Mathews did so, and during that conversation Schrah stated that Mathews informed him that Dorian threatened her a few days earlier. He further testified that Mathews informed him that Dorian stated he did not want to see his brother get in trouble, and that Dorian then visited Mathews' house and offered to pay her $100 if she refused to testify against him. In her trial testimony, Mathews denied any link between the fire and the incident involving Idriss and Roseborough. Mathews also denied

telling Schrah that she feared for her safety, that Dorian had threatened her in any manner, or that she was told by Dorian not to contact the police. Mathews testified the reason she did not speak to Schrah the night of the fire was not due to fear, but rather premised on her being upset about her car as well as trying to get her children away from the fire and all of the surrounding commotion.

Testimony revealed that during the night of the fire, Officer Miles met Shannon Nevins, Nicholas Nevins, and Moet Nevins, who lived in the house on the right of Mathews.[FN2] Nicholas was in fifth grade at the time of the trial, and Moet was in seventh grade. Officer Miles asked the residents if anyone had seen who started the fire. Nicholas and Moet indicated they saw two men start the fire, and that one of the men was an ex-boyfriend of a girl from the house next door. One of them indicated that they thought the men were brothers or family members. Officer Miles returned the next day with two photo-arrays containing six pictures each. One of the photo-arrays contained a picture of Idriss, and the other contained a picture of Dorian. Officer Miles showed Nicholas a photo-array, and he identified Idriss as one of the men that set the car on fire. Nicholas did not identify Dorian from the other photo-array. Moet could not pick either of them out of a photo-array. Officer Miles also had the children write out statements, which Officer Miles signed at the bottom. After questioning the children further, one of them told him that Idriss was one of the men who had started the fire, and Officer Miles added that to the statement. Although the police offered a reward for information leading to the arrest of the individuals that started the fire, the police did not offer the reward until after Officer Miles talked with Nicholas and Moet. Through her investigation, Officer Miles learned that Idriss often visited the house on the left side of the fire.

[FN2.] Miles testified that she also met with other neighbors, but they refused to give a statement.

At trial, Moet testified that, on the night of the fire, through the dining room window of her home, she saw two black men outside near the car that was burned. The men she saw that evening wore white tee shirts under black hooded sweatshirts. She testified further that she knew the name of one of the men, "Mike." She then identified Idriss as one of the men that started the fire. Although she saw one other

5

person with Idriss, she did not see that person in the courtroom at that time. She stated that she did identify the other man at a previous proceeding, but that she did not remember his face anymore because it had been too long.

After a late morning recess, the assistant prosecutor informed the trial court that he intended to recall Moet to the stand to identify Dorian as the other man at the scene of the fire. The assistant prosecutor indicated that Moet told him that, when she initially testified, a computer screen blocked her view of Dorian. Dorian's defense counsel objected, and argued that it was inappropriate to allow a witness to retake the stand after a recess and after speaking with the assistant prosecutor. The trial court then questioned Moet outside the presence of the jury and ruled that Moet would be allowed to testify over the objections of defense counsel. Moet then retook the stand and identified Dorian as one of the men involved in setting the fire. She testified that she could not see Dorian or the other attorney during her prior testimony because the assistant prosecutor's computer blocked her sight. During cross-examination, she confirmed that she was not able to pick Dorian from a photo-array earlier, and that she did not initially tell Officer Miles that Dorian was there, but insisted that the only reason she did not identify him in court before was because of the computer. Moet also testified that she did not know Dorian's name at the time of the fire, but knew that he was Idriss' brother.

Idriss presented an alibi defense asserting that he was with his uncle and a friend on the night of the fire at a mall visiting a shop owned by a family member. After that, they played cards and Idriss left his residence around 9:30 or 9:45 that evening. Idriss had failed to tell police of being with his uncle, but he did tell them that he was with his sister in Brighton on the night of the fire. Following the evidence presented by the defense, the case was presented to the jury which returned guilty verdicts.

*People v. Robinson*, No. 301605, 2012 WL 1109049, *1-3 (Mich. Ct. App. April 3, 2012) (per curiam) (unpublished).

Following his trial and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising his insufficient evidence claim, as well as a sentencing claim. The court found that both claims lacked merit and affirmed his convictions and the sentences imposed in connection with those convictions. *Id.* at *3-5. Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Robinson*, 492 Mich. 858, 817 N.W.2d 104 (2012). The instant habeas petition, dated October 10, 2013, was filed with this Court on October 18, 2013.

## II. STANDARD OF REVIEW

Petitioner's habeas petition is subject to review pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"). Pub. L. No. 104-132, 110 Stat. 1214. In order to grant relief, this Court must conclude that the Michigan court's decision "with respect to any claim that was adjudicated on the merits in State court proceedings" was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[]" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

The Supreme Court of the United States has elaborated upon the standards set forth in the two clauses contained in 28 U.S.C. § 2254(d)(1). "A state-court

decision is contrary to clearly established federal law if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009) (quoting *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519 (2000) (alterations in original) (internal quotation marks omitted)). Alternatively, "[i]f the state court identifies the correct governing legal principle . . . , habeas relief is available under the unreasonable application clause if the state court unreasonably applies that principle to the facts of the prisoner's case or unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Akins v. Easterling*, 648 F.3d 380, 385 (6th Cir. 2011) (internal quotation marks and alterations omitted); *Williams*, 529 U.S. at 409, 120 S. Ct. at 1521. A federal court may not find a state court's application of Supreme Court precedent unreasonable if it is merely "incorrect or erroneous. [Rather, t]he state court's application must have been 'objectively unreasonable.'" *See, e.g.*, *Wiggins v. Smith*, 539 U.S. 510, 520-21, 123 S. Ct. 2527, 2535 (2003) (citations omitted).

As suggested by the above-quoted language, AEDPA's standard of review is "difficult to meet . . . [as it is a] highly deferential standard." *Cullen v. Pinholster*, 563 U.S. __, 131 S. Ct. 1388, 1398 (2011); *Renico v. Lett*, 559 U.S. 766, 773, 130

S. Ct. 1855, 1862 (2010) ("AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'") (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 2067 (1997) and *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 360 (2002) (per curiam)). In fact, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. \_\_, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 2150 (2004) (per curiam)). Principles of federalism, comity, and parity between the state and federal court systems animate this deference: as the Supreme Court has explained, "a federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003). Indeed, a "readiness to attribute error [to a state court's decision] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24, 123 S. Ct. at 360. "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia,* 443 U.S. 307, 332 n.5, 99 S. Ct. 2781, 2796 n.5 (1979) (Stevens, J., concurring in judgment)).

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Harrington*, 131 S. Ct. at 786. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87.

### III. ANALYSIS

Petitioner's sole claim on habeas review is that the prosecution failed to present sufficient evidence to support his arson convictions. Reduced to its essence, Petitioner challenges the credibility of the eyewitness testimony identifying him as one of the perpetrators of the crime.

Petitioner's argument that his convictions were secured despite insufficient evidence sounds in due process. The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970). Courts evaluating challenges to the

sufficiency of evidence must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2788-89 (internal citation and footnote omitted). In conducting this analysis, courts may not reweigh the evidence or reexamine the credibility of the witnesses, *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S. Ct. 843, 851 (1983), as "[i]t is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony[,]" *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992)). Thus, federal courts sitting in habeas review must defer to the fact-finder's assessment of witness credibility. *Id.*

The sufficiency of the evidence standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n.16, 99 S. Ct. at 2792 n.16, and through the framework of 28 U.S.C. § 2254(d), *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the fact-finder at trial and the state court on appellate review – as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Under Michigan law, the elements of arson of a dwelling house are: (1) the defendant willfully and maliciously burned a dwelling house and (2) the defendant intended to burn the dwelling house, or intentionally committed an act that created a very high risk of burning the house, and the defendant knew of that risk and disregarded it. Mich. Comp. Laws § 750.72; *People v. Dolittle*, Nos. 298235, 298236, 2011 WL 4424351, at *1 (Mich. Ct. App. Sept. 22, 2011) (unpublished) (citing Mich. Comp. Laws § 750.72 and *People v. Barber*, 255 Mich. App. 288, 294-95, 659 N.W.2d 674, 679 (2003)). The elements of arson of personal property worth more than $200 but less than $1,000 are: (1) the defendant set the property on fire; (2) the property burned was personal property; (3) the defendant intentionally set the fire knowing it would damage the personal property; and (4) the property that burned had a fair market value of more than $200 but less than $1,000. Mich. Comp. Laws § 750.74(1)(b)(I). Irrespective of the offense charged, the prosecution must also satisfy its burden of establishing beyond a reasonable doubt that the defendant being tried committed the charged offense. *People v. Kern*, 6 Mich. App. 406, 409, 149 N.W.2d 216, 218 (1967). In other words, "proof of [the] defendant's connection with the alleged offense is an indispensable element of [the prosecutor's] duty." *Id.* Direct or circumstantial evidence and reasonable inferences arising from the evidence adduced at trial may constitute satisfactory proof of the elements of an offense, *People v. Jolly*, 442 Mich. 458,

466, 502 N.W.2d 177, 180 (1993) (citation omitted), including the identity of the perpetrator, *Kern*, 6 Mich. App. at 409-10, 149 N.W.2d at 218; *see also People v. Johnson*, 146 Mich. App. 429, 434, 381 N.W.2d 740, 742 (1985).

The Michigan Court of Appeals determined that the prosecution presented sufficient evidence to support Petitioner's arson convictions and denied relief on this claim. The court explained:

> Idriss first argues that the prosecution presented insufficient evidence to support his arson convictions.[FN3] When determining whether sufficient evidence has been presented to sustain a conviction, this Court must "examine the evidence in a light most favorable to the prosecution, resolving all evidentiary conflicts in its favor, and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond reasonable doubt." *People v. Ericksen*, 288 Mich App 192, 196; 793 NW2d 120 (2010). Although this Court reviews the record de novo, *id*., the standard of review is deferential, and this Court must draw all reasonable inferences in favor of the verdict, *People v. Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).
>
> [FN3.] Idriss never contested that he had committed the assault and battery and does not challenge that conviction on appeal.
>
> To support a conviction of arson of a dwelling house, the prosecution must prove that: (1) the defendant willfully and maliciously burned a dwelling house; and (2) the defendant intended to burn the dwelling house, or intentionally committed an act that created a very high risk of burning the house, and the defendant knew of that risk and disregarded it. MCL 750.72; *see also People v. Barber*, 255 Mich App 288, 294-295; 659 NW2d 674 (2003). Additionally, when a defendant starts a fire that spreads to dwellings, he is guilty of arson of a dwelling house for each separate house that burns, even though the defendant only started a single fire. *Barber*, 255 Mich App at 295.

To support a conviction of arson of personal property worth more than $200 but less than $1,000, the prosecution must prove that: (1) the defendant set property on fire; (2) the property burned was personal property; (3) the defendant intentionally set the fire knowing it would damage the personal property; and (4) the property that burned had a fair market value of more than $200 but less than $1,000. MCL 750.74.

Idriss argues that the prosecution did not meet its burden to show that he either started the car fire or assisted Dorian in starting the car fire. As with any crime, identity is an inherent element of these crimes. *People v. Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Thus, the prosecution must prove that the defendant committed the act that started the fire. *Id*. However, the positive identification of a defendant by witnesses is sufficient to support a conviction of a crime, and "[t]he credibility of identification testimony is a question for the trier of fact that [this Court will] not resolve anew." *People v. Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). The prosecution may meet its burden to prove the defendant's identity by presenting either direct or circumstantial evidence that establishes that element beyond a reasonable doubt. *Nowack*, 462 Mich at 402-403.

As previously stated, Nicholas and Moet Nevins testified that they saw Idriss start the fire. Nicholas was able to identify Idriss from a photo array presented a day after the fire. Additionally, the witnesses indicated that they had seen Idriss on several prior occasions, and Moet was able to identify him by his nickname, "Mike." Although Idriss presented strong impeachment testimony regarding Nicholas and Moet's testimony, this is insufficient to undermine the jury's verdict. The impeachment testimony presented showed that the children's testimony was sometimes inconsistent, that it may have been dark outside on the night of the fire, and that the children may have known about a reward for their testimony. However, the trial court properly held that the children were competent to testify because they understood the difference between the truth and a lie, and promised to tell the truth. Therefore, the impeachment testimony relates to the children's credibility as witnesses. "This Court scrupulously leaves questions of credibility to the trier of fact to resolve. . . ." *Ericksen*, 288 Mich App at 196, citing *People v. Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005). Thus, the

14

> trial court properly allowed the jury to resolve these credibility issues and decide whether to believe their testimony. Our review of the record leads us to conclude that when viewed in the light most favorable to the prosecution, there was sufficient evidence to support Idriss' arson convictions.

*Robinson*, No. 301605, 2012 WL 1109049, at *3-4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or of the facts established at trial. The testimony of Nicholas Nevins and Moet Nevins identifying Petitioner as one of the perpetrators, if believed, provides sufficient evidence that Petitioner committed the charged arson offenses. Petitioner challenges the veracity of the children's testimony and the credibility determinations made by the jury at trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793 ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."); *Martin*, 280 F.3d at 618. The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable in that the evidence presented at trial, viewed in a light most favorable to the prosecution, established beyond a reasonable doubt that Petitioner committed the

15

arson offenses. As such, Petitioner is not entitled to habeas relief and the Court therefore denies Petitioner's application for writ of habeas corpus.

## IV. CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *see also* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). Title 28 U.S.C. § 2253 governs appeals in § 2254 proceedings and provides, in pertinent part: "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In explaining the meaning of a "substantial showing" necessary to receive of a certificate of appealability, the Supreme Court has explained that when a district court denies a habeas petition on the merits of the claims presented, a certificate may issue if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.[1] *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000); *see also Miller-El*, 537 U.S. at 327, 123 S. Ct. at 1034 ("A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.").

---

[1] If a petitioner makes the requisite showing and a district court grants a certificate of appealability, the court must indicate the specific issue or issues for which the applicant made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(3).

Having denied the sole claim presented in Petitioner's application for habeas corpus relief, the Court must make a determination as to whether the issuance of a certificate of appealability is warranted. For the reasons stated in this Opinion and Order, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability shall not issue in this case. *Steele v. Withrow,* 157 F. Supp. 2d 734, 743 (E.D. Mich. 2001). The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal as an appeal cannot be taken in good faith. *See* Fed. R. App. P. 24(a).

## V. CONCLUSION AND ORDER

For the reasons stated above, the Court concludes that Petitioner is not entitled to federal habeas relief. Petitioner's application for writ of habeas corpus is therefore **DENIED**. Further, leave to proceed *in forma pauperis* on appeal is **DENIED** and a certificate of appealability shall not issue.

**IT IS SO ORDERED**.

Dated: January 14, 2014

                                        s/PATRICK J. DUGGAN
                                        UNITED STATES DISTRICT JUDGE

Copies to:
**Idriss Robinson**, 330120
Bellamy Creek Correctional Facility
1727 West Bluewater Highway
Ionia, MI 48846